[Civ. No. 6400. Fourth Dist. Jan. 27, 1961.]

NORMAN A. WHITTAKER, Respondent, v. MERLE F. OTTO, Appellant.

Willis Smith for Appellant.

Forslund & Wilson and Douglas E. Wilson for Respondent.

SHEPARD, J.—This is an appeal from a judgment for plaintiff in an action in ejectment.

From the record before us it appears, in substance, that the mining claims here subject of possessory dispute, were originally patented in 1911, and recorded January 12, 1912, from the United States to The Iron Cap Copper Mining Company, a corporation, hereinafter called ''Company''; that Company was incorporated in Wyoming; that said Company's right to do business was forfeited in November 1912, in California, and in 1927 in Wyoming; that in 1944 Percy Hagerman, hereinafter called ''Percy,'' was a major stockholder of Company and the sole surviving director; that he deeded said claims to himself, as trustee, in that year, ''as sole surviving director of The Iron Cap Copper Mining Company, a defunct corporation''; that in 1946 appellant corresponded with Percy, agreed to and did take possession of the claims on behalf of Percy to act as caretaker and to find a buyer; that in 1950 Percy died and his son, Lowry Hagerman, hereinafter called ''Lowry,'' took over his father's affairs; that the same relationship that obtained with the father was continued between appellant and Lowry; that in 1952, one James O. Causey was secured by appellant on behalf of Lowry as a prospective buyer; that an agreement was signed by which Causey was to receive three shares of stock in Company from Lowry, was to clear title to the claims and have the right to mine same; that Causey paid $2,000 to Lowry, and Lowry paid $1,000 to appellant for appellant's services in securing Causey as a prospective buyer; that in the same year Causey filed a superior court action seeking appointment of himself as trustee of the claims, with a second cause of action in the nature of quiet title; that in 1957 respondent secured an option from Causey to purchase Causey's interest, and also a lease from Lowry as an individual and as trustee for the heirs of Percy and for Company; that in said trustee proceeding so instituted by Causey, apparently no trustee was, in fact, appointed, and no further action taken until the year 1958 when, pursuant to a petition by respondent herein, an order was made approving the above mentioned lease of the claims from Lowry, individually and as trustee for the heirs of Percy, and Company, as lessor, to respondent herein as lessee; that from the year 1950, appellant continued to act as caretaker of the property for Lowry and paid some of the annual taxes, claiming reimbursement therefor from Lowry; that in 1957 appellant unsuccessfully sought to buy the property from Lowry; that signs

posted on the property by appellant read "Merle F. Otto, Agent for Owner"; that these signs were later changed to read "Merle F. Otto, Owner," the date of the change being in conflict but the evidence being sufficient to support a finding that the change was not made until in 1958; that during the 10 years from 1949 to 1959, the property was assessed on the ad valorem tax roll of Inyo County to Percy Hagerman or to the estate of Percy Hagerman; that about April 7, 1958, appellant executed a deed to the property to himself as grantee.

## AGENCY

Appellant first contends that the evidence is insufficient to support the court's finding that appellant was, prior to 1957 and subsequent thereto, acting as agent for Lowry. In addition to the evidence above recited, most of which came from appellant's own testimony, many letters to and from Lowry and appellant herein gave clear inferences that appellant considered himself to be acting as Lowry's agent, that such taxes as were actually paid by appellant were paid by him on Lowry's behalf, and that he considered Lowry liable therefor to him. For example, a letter written by appellant to Lowry on January 28, 1957, contained the statement: "At the present time I have the property posted that I am the agent and caretaker, and make a trip out to the claims every few weeks." This was a clear statement when read in connection with the other evidence, that appellant held possession for Lowry. Other letters written in this year contained the same indication. Several witnesses testified to seeing a sign posted on the property in 1957 and 1958, reading, "Merle Otto, Agent for Owner." Other testimony recites conversations with appellant in which appellant stated he was acting for "Hagerman" in negotiating with respondent in 1956 and 1957. The only Hagerman then connected with the property was Lowry. While some of this testimony was in conflict, much of it was not.

First should be borne in mind the often repeated rule that when an appeal is taken on the ground of insufficiency of evidence to support the findings, the duty of the appellate court is only to find whether or not there is any substantial evidence, contradicted or uncontradicted, to support the findings. (*Brewer* v. *Simpson*, 53 Cal.2d 567, 583 [1-3] [2 Cal. Rptr. 609, 349 P.2d 289].)

Agency may, like most matters, be proven by circumstantial evidence, including evidence of the acts of the parties

and their oral and written communications. (*Smith* v. *Schutt-pelz*, 1 Cal.2d 158, 161 [2] [33 P.2d 836] ; *Crabbe* v. *Mires*, 112 Cal.App.2d 456, 459 [3] [246 P.2d 991] ; *Gerlinger Foundry & Machine Works, Inc.* v. *Crescent Gold Dredging Co.*, 108 Cal.App.2d 185, 189 [238 P.2d 608].)

''An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency.'' (Civ. Code, § 2295.)

An agency may be created by oral as well as written authorization. It requires no consideration other than the agreement of the parties, and the agent may be authorized to carry forward any ordinary business transaction, the agent's act becoming the act of his principal. (Civ. Code, §§ 2304-2309.)

 We are satisfied that the evidence is amply sufficient to support the court's finding that appellant acted as agent of Lowry in his possession of the claims, and that appellant's contention thereon is without merit.

### TITLE OF PRINCIPAL DOES NOT AFFECT AGENCY

 As a part of his first contention, appellant appears to contend that he could not be the agent of Lowry because Lowry did not have legal title. As was said by our Supreme Court many years ago, in legal reasoning which is just as valid today as when uttered:

''The subject matter of the agency was the plaintiff's claim to the mining ground. Where property, or the claim to property, is the subject to which the agency relates, we do not understand it to be requisite that the principal must hold a perfect title, or an equitable title that will enable him to acquire the legal title; and we know of no rule that will prevent the parties from creating an agency which has for its subject matter a mere naked claim to property. If a perfect title will suffice, and a mere claim will not, where is the line to be drawn between the several grades and characters of title, on the one side of which they will, and on the other side they will not, amount to enough to support the agency? The agency may be created for the very purpose of procuring title, either legal or equitable, and so it may be for the protection of an asserted title, whether well founded or not. Otherwise, the rule forbidding the agent from acquiring an outstanding title for his own use never could have any application when the principal held a legal title; for if the outstanding title was not the true one, its acquisition by the agent could be of no possible injury to the principal; and if it was the true

title, the principal could not complain, for his title, not being the true title, amounted to no more than a mere claim.

"The principle is elementary that an agent who is informed of a defect in his principal's title to land, is not permitted to acquire a title for himself, but will be held as a trustee for his principal." (*Hardenbergh* v. *Bacon,* 33 Cal. 356, 376.) (See also *Neet* v. *Holmes,* 25 Cal.2d 447, 464-465 [14] [154 P.2d 854].)

An agent's relationship to his principal is essentially fiduciary in character and in any dealing with his principal he is bound to the principles of good faith and honesty. (*Young* v. *Young Holding Corp., Ltd.,* 27 Cal.App.2d 129, 147-148 [4] [80 P.2d 723]; *Adams* v. *Herman,* 106 Cal.App. 2d 92, 98 [4, 5] [234 P.2d 695]; *Terry* v. *Bender,* 143 Cal. App.2d 198, 211 [15] [300 P.2d 119].)

In the case here at bar, the court has, on sufficient evidence, found that appellant was in possession solely as agent of Lowry, from whom respondent received his lease and who therefore is the successor in interest of and stands legally in the shoes of Lowry. Appellant, as agent, gained his original possession from Percy, and continued to hold as agent for Lowry. He is in no better position to deny the title of his principal than a lessee in possession attempting to deny the title of his landlord, or a vendee in possession attempting to deny the title of his vendor. A lessee cannot ordinarily deny title of his landlord without first surrendering possession. (*Swartzbaugh* v. *Sampson,* 11 Cal.App.2d 451, 462 [6] [54 P.2d 73].) By statute, the possession of a tenant is the possession of the landlord. (Code Civ. Proc., § 326.) So, also, ordinarily, a vendee in possession under an executory contract of sale is estopped to deny the validity of his vendor's title for the purpose of defeating the agreement. (*Kasey* v. *Molybdenum Corp. of America,* 176 Cal.App.2d 346, 351-352 [1 Cal. Rptr. 393].)

While these general rules have some exceptions, we know of none which would assist appellant under the facts in the case at bar. The general rule controlling an agent under circumstances here found to be true by the court and supported by the evidence in this case, is well expressed in 3 Corpus Juris Secundum 12, section 140: "In the absence of full knowledge and consent on the part of his principal, an agent may not acquire any right or title in the subject matter of the agency by the use of his position or any information acquired by him during the course of his employment."

We conclude that the possession of appellant was, in law, the possession of Lowry, and therefore of respondent, and that there is no merit in the contention of appellant.

## RESPONDENT'S TITLE WAS SUFFICIENT

Appellant next contends that the trial court erred in holding that respondent is a lessee of Lowry. As has been hereinbefore pointed out, an agent may not ordinarily take advantage of his agency to gain adverse or other possessory title against his principal. The attempt of appellant to deed the property to himself on April 7, 1958, and thus to create some color of title in himself, was a nullity as far as Lowry's interests were concerned, and whatever Lowry's rights were enured to the benefit of respondent to the extent of the lease-hold authority.

Appellant appears to base his contention on the provisions of Wyoming and California law (Wyo. Code, §§ 5441, 5442; Cal. Corp. Code, §§ 3901 et seq.), which, in effect, make the directors of a defunct corporation trustees of the property. for the purpose of winding up its affairs and generally prohibiting making of further executory contracts. He goes on to reason from that that the lease approved by the superior court was invalid and a nullity for all purposes, citing *Crossman* v. *Vivienda Water Co.*, 150 Cal. 575 [89 P. 335].

The case above cited is exemplary of all the authorities on this subject cited by appellant. It was one involving an action by a creditor of the corporation. As against any claims of the state or of stockholders or of creditors of the corporation, such an argument as appellant advances (although it does not appear to be wholly supported by Corp. Code, §§ 4800-4802) would appear to have sufficient substance to warrant close examination and attention. However, appellant is in no such position. By accepting the agency, he estopped himself from using the possession gained thereby to gain an advantage over his principal, Lowry. We are satisfied that there was sufficient color of title in Lowry to support the transfer thereof through lease to respondent herein, except perhaps, as against anyone directly interested as a creditor or stockholder of the corporation.

In the embranglement of title with which we are here concerned, we find Percy and Lowry in uninterrupted possession of the property through their agent under claim of right with payment of taxes for more than fourteen years. Their claim of right has always been on a trusteeship basis, seeking to preserve the assets for the stockholders of the corporation and

themselves. As such trustees, they were attempting to hold the assets adversely as against all the world. Without suggesting that such proceedings gave them a clear and ordinarily merchantable title, we are satisfied that these and other circumstances developed by the evidence fully supported the conclusion of the trial court that sufficient color of title existed to authorize the maintenance of an ejectment action as against the person who was acting as their agent and attempting to take advantage of possession gained solely through that agency.

Ejectment is a mere possessory action in its inherent characteristics and does not necessarily try ultimate title, even though such trying of title does, in fact, occur in many cases due to its sometimes inextricable cohesion with the question of the right of possession. (*Paap* v. *Von Helmholt*, 185 Cal. App.2d 823, 829 [5-7] [8 Cal.Rptr. 568]; *Craviotto* v. *All Persons*, 93 Cal.App. 346, 352 [1, 2] [269 P. 760]; *Barcroft* v. *Livacich*, 35 Cal.App.2d 710, 717 [2] [96 P.2d 951]; *B & B Sulphur Co.* v. *Kelley*, 61 Cal.App.2d 3, 9 [10] [141 P.2d 908].)

Where neither party relies on actual fee title, prior possession by plaintiff and superior right of possession are sufficient to support the action. (*Hart* v. *Cox*, 171 Cal. 364, 367 [153 P. 391]; *Elliott* v. *McIntosh*, 41 Cal.App. 763, 768 [9] [183 P. 692]; *Fuller* v. *Fuller*, 176 Cal. 637, 638 [2] [169 P. 369].)

The right of appellant to reimbursement for those taxes that he paid was not a subject of controversy before the trial court, and therefore needs no comment.

We are satisfied that the findings complained of by appellant are sufficiently supported by the evidence, and that appellant's points on appeal are without merit.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.